UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------------------- X

**SHIMSHON SAM HALPERIN**
20 Wallenberg Cr., Monsey, NY 10952;

**SARA HALPERIN**
20 Wallenberg Cr., Monsey, NY 10952;                    15 Civ. _____

**MURRAY BRAUN**
128 McCadden Place, Los Angeles, CA 90004;

                    and

**ESTHER BRAUN**
128 McCadden Place, Los Angeles, CA 90004,

                    Plaintiffs,

          -against-

**THE ISLAMIC REPUBLIC OF IRAN**
Ministry of Foreign Affairs
Khomeini Ave.United Nations St.
Teheran, Iran;

**THE IRANIAN MINISTRY OF INFORMATION AND
SECURITY**
Pasdaran Ave. GolestanYekon Teheran, Iran

and

**THE SYRIAN ARAB REPUBLIC**
c/o Foreign Minister Walid al-Mualem
Ministry of Foreign Affairs
Shora, Muajireen, Damascus, Syria

                    Defendants.

---------------------------------------------------------------------- X

## COMPLAINT

Plaintiffs, by their counsel, complain of the Defendants, and hereby allege for their Complaint as follows:

## INTRODUCTION

1.      This is a civil action for wrongful death, personal injury and related torts pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq*., arising from a vehicular terror attack carried out by the Hamas terrorist organization on October 22, 2014 in Jerusalem Israel, in which infant Chaya Zissel Braun and one other person were killed and at least seven others were injured ("Terrorist Attack").

2.      The Terrorist Attack was carried out by Hamas using material support and resources provided by defendants the Islamic Republic of Iran and the Syrian Arab Republic.

3.      Decedent Chaya Zissel Braun, a three month-old United States citizen domiciled in Israel, was severely injured in the Terrorist Attack and died of her injuries at the hospital later that day. Chaya's father, Shmuel Elimelech Braun, also a United States citizens domiciled in Israel, was injured in the Terrorist Attack but survived. Chaya's mother, Chana Braun was present and witnessed the heinous murder of her baby and received severe emotional injuries but fortunately was not physically harmed by the vehicle.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330-1332, 1367 and 1605A(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4) and the rules of pendent venue.

## THE PARTIES

5.      Plaintiffs Shimshon Sam Halperin and Sara Halperin at all times relevant hereto are and were United States citizens domiciled in New York, and the parents of plaintiff Chana Braun and the grandparents of decedent Chaya Zissel Braun.

6.      Plaintiffs Murray Braun and Esther Braun at all times relevant hereto are and were United States citizens domiciled in California, and the parents of plaintiff Shmuel Elimelech Braun and the grandparents of decedent Chaya Zissel Braun.

7.      Defendant The Islamic Republic of Iran ("Iran") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated since 1984 as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Iran, through its political subdivisions, agencies, instrumentalities, officials, employees and agents, including the Iranian Ministry of Information and Security, provided Hamas with material support and resources, for acts of extrajudicial killing within the meaning of 28 U.S.C. § 1605A(a)(1), including the Terrorist Attack, and performed other actions that enabled, facilitated and caused the Terrorist Attack and harm to the plaintiffs herein.

8.      Defendant The Iranian Ministry of Information and Security ("MOIS") is the Iranian intelligence service. Within the scope of its agency and office, MOIS provided material support and resources for the commission of acts of extrajudicial killing, including the Terrorist Attack, and performed other actions, that enabled, facilitated and caused the Terrorist Attack and harm to the plaintiffs herein.

9.      Defendant The Syrian Arab Republic (hereinafter "Syria") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Syria provided Hamas with material support and resources for the commission

of acts of extrajudicial killing within the meaning of 28 U.S.C. § 1605A(a)(1), including the Terrorist Attack, and performed other actions that enabled, facilitated and caused the Terrorist Attack and harm to the plaintiffs herein.

## UNDERLYING FACTS

### Hamas

10.     Hamas is a radical terrorist organization that was established by Islamic militants in 1987.  It is the Palestinian branch of the extremist Muslim Brotherhood organization.

11.     Hamas views Israel and the United States as the greatest enemies of Islam. Hamas opposes a peaceful resolution of the Middle East conflict. The Hamas charter, first published in 1988, states that "There is no solution to the Palestinian problem except by Jihad," or violent struggle against Israel and the West.

12.     Hamas's openly-declared goal is the creation of an Islamic state in the territory of Israel, the West Bank and the Gaza Strip, and the destruction of the State of Israel and the murder or expulsion of its Jewish residents. Hamas seeks to achieve this goal by carrying out terrorist attacks against Jewish civilians in Israel, the West Bank and the Gaza Strip. Hamas proudly and openly acknowledges that it uses terrorism to achieve its political goals. Hamas employs extremist violence against civilian targets in an effort to coerce, intimidate and influence government decision-makers and the public in Israel to accept Hamas's demands.

13.     Between the time of its founding and October 22, 2014 (and until the present day), Hamas has carried out thousands of terrorist attacks in Israel, the West Bank and the Gaza Strip, in which scores of Israeli and U.S. citizens, as well as the nationals of many other countries, were murdered and thousands more wounded.

14.     Between the time of its founding and October 22, 2014, Hamas's policy and practice of carrying out terrorist attacks was and is notorious and well known to the public at large, including the defendants.

15.     Between 1999 and October 22, 2014, the courts of the United States, including this Court, published a number of decisions finding that Hamas was responsible for terrorist attacks in which American and Israeli citizens were killed or injured.

16.     Hamas has been designated by the United States Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

## Iran's Provision of Material Support and Resources to the Hamas

17.     Since 1984 until the present time, defendant Iran has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

18.     During the period relevant hereto, including the several year period preceding the Terrorist Attack, defendants Iran and MOIS provided Hamas with massive financial support with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. Such financial support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Iran, in order to assist Hamas achieve goals shared by Iran. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness through extremist violence targeting civilians.

19.     The Iranian defendants provided this financial support to Hamas pursuant to an agreement reached between Iran and Hamas in the 1980s which remains in force until today. Under that agreement, Hamas undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Iran undertook to provide Hamas with financial support to carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement was to achieve the goals detailed in the preceding paragraph.

20.     The Iranian defendants gave substantial aid, assistance and encouragement to one another and to Hamas, and provided massive financial support to Hamas, and thereby aided and abetted Hamas, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. The Iranian defendants did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to Hamas.

21.     The Iranian defendants knowingly and willingly conspired, agreed and acted in concert with one another and with Hamas, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. The Iranian defendants did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas.

22.     At all times relevant hereto, defendant MOIS was an agency, instrumentality and/or office of defendant Iran, and performed acts on behalf of defendant Iran, in furtherance of

the interests and policy of defendant Iran and within the scope of its agency and office, within the meaning of 28 U.S.C. § 1605A(a)(1) and 28 U.S.C. § 1605A(c), which caused the Terrorist Attack and harm to the plaintiffs herein, in that defendant MOIS implemented and acted as a conduit and instrumentality for Iran's provision of funds to Hamas for the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack.

23.     Defendant Iran authorized, ratified and approved the acts of defendant MOIS.

24.     Accordingly, defendant Iran is vicariously liable for the acts of defendant MOIS.

25.     This Court repeatedly has held Iran and MOIS liable to victims of state-sponsored terrorism, particularly for terrorist acts carried out by Hamas in Israel. *See, e.g., Bennett v. Islamic Republic of Iran,* 507 F. Supp.2d 117 (D.D.C. 2007); *Bodoff v. Islamic Republic of Iran*, 424 F. Supp.2d 74 (D.D.C. 2006); *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003); *Stern v. Islamic Republic of Iran*, 271 F. Supp.2d 286 (D.D.C. 2003); *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13 (D.D.C. 2002); *see also Leibovitch v. Syrian Arab Republic*, 25 F. Supp. 3d 1071 (N.D. Ill. 2014).

**Syria's Provision of Material Support and Resources to Hamas**

26.     Since 1979 until the present time, defendant Syria has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

27.     During the period relevant hereto, including the several year period preceding the Terrorist Attack, defendant Syria provided Hamas with material support and resources within the meaning of 28 U.S.C. § 1605A(a)(1), described in detail below, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. Such support was provided continuously, routinely and in

furtherance and as implementation of a specific policy and practice established and maintained by Syria, in order to assist Hamas achieve goals shared by Syria. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness through extremist violence targeting civilians.

28.     Defendant Syria provided the material support and resources detailed below to Hamas pursuant to an agreement reached between Syria and Hamas in the late 1980s. Under that agreement, Hamas undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Syria undertook to provide Hamas with material support and resources to carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement was to achieve the goals detailed in the preceding paragraph.

29.     The material support and resources which were provided by Syria to Hamas in the years preceding the Terrorist Attack for the purpose of facilitating acts of extrajudicial killing and terrorism included *inter alia*: provision of financial support to Hamas for the purpose of carrying out terrorist attacks; provision of military-grade explosives, military firearms and other weapons and material to Hamas; provision of specialized and professional military training for the planning and execution of terrorist attacks (hereinafter: "terrorist training") to Hamas; providing use of Syria-owned and operated training bases and military facilities in which terrorist training was provided to Hamas and its terrorist operatives; providing Hamas and its terrorist operatives with safe haven and refuge from capture in Syria and in areas of Lebanon controlled by Syria; providing Hamas means of electronic communication and electronic communications equipment for carrying out terrorist attacks; financial services, including banking and wire transfer services, provided to Hamas by financial institutions owned and controlled by Syria at Syria's direction, which services were intended to and did enable Hamas

to surreptitiously transfer funds used to finance terrorist attacks; and means of transportation, including allowing terrorist operatives of Hamas passage and transportation on Syrian-owned aircraft to allow them to avoid detection and carry out further terrorist attacks.

30.     At all times relevant hereto, defendant Syria provided Hamas and its terrorist operatives with terrorist training at military training bases, camps and facilities operated and/or funded and/or controlled by Syria and located in Syria and in areas of Lebanon controlled by Syria, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. This terrorist training, which was professional and extensive and included the use of explosives, firearms and other weapons, was provided by and through Syrian military and intelligence officials, and other agents, employees and officials of Syria acting within the scope of their agency and employment and under the express command and authorization of Syria.

31.     In addition, at all times relevant hereto, Syria provided terrorist training, weapons, and funds to be used to carry out terrorist attacks to Hamas and its terrorist operatives, by and through the agency of other terrorist organizations which received material support and resources from Syria, and which acted as instrumentalities, agents and proxies of Syria for the purpose of providing terrorist training and other material support and resources to Hamas.

32.     At all times relevant hereto, Syria provided Hamas and its terrorist operatives with lodging, safe haven and shelter in Syria and in areas of Lebanon controlled by Syria, with the specific intention of preventing their apprehension and permitting them to plan and carry out acts of extrajudicial killing and international terrorism freely and unhindered. This lodging, safe haven and shelter was provided on military bases and facilities, and in residences, owned and controlled by Syria.

33.     Syria gave substantial aid, assistance and encouragement to Hamas, and provided the massive material support and resources described above to Hamas, and thereby aided and abetted Hamas, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. Defendants Syria did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to the Hamas.

34.     Syria knowingly and willingly conspired, agreed and acted in concert with Hamas, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. Defendant Syria did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas.

**The Terrorist Attack**

35.     On an unknown date or dates prior to October 22, 2014, Hamas planned, conspired and made preparations to kill and injure innocent Israeli civilians by means of vehicular terror attacks against pedestrians and groups of commuters waiting at bus stops and train stations.

36.     Pursuant to the aforementioned plan, on the afternoon of October 22, 2014, an agent and operative of Hamas, Abdel Rahman Shaludi ("Shaludi") drove a car to the Ammunition Hill light rail station in Jerusalem with the intention of causing injury and/or death to Israeli civilians by traveling at high speed and ramming his vehicle into them.

37.     Shaludi had previously served time in Israeli prison for terrorism related offenses. He was the nephew of Mohiyedine Sharif, the former head of the Hamas military wing and its chief bomb-maker.

38.     As a group of passengers, including Shmuel Elimelech Braun and Chana Braun, who was pushing her infant daughter's stroller, were disembarking from the light rail at the Ammunition Hill station, Shaludi drove onto the light rail tracks and rammed his vehicle into the crowd of pedestrians. The vehicle struck three-month old Chaya's stroller causing her to be thrown some ten meters into the air. Decedent Chaya Zissel Braun landed on her head on the pavement while her mother, Chana Braun, screamed in horror. Shmuel Elimelech Braun was knocked over and badly injured by the car.

39.     The terrorist attacker, Shaludi, was shot by Israeli police as he attempted to flee the scene and later died of his wounds.

40.     Decedent Chaya Zissel Braun was critically injured in the Terrorist Attack. When rescue personnel arrived, they found Chaya with no pulse and serious head injuries. The rescue personnel succeeded in resuscitating Chaya and obtaining a pulse. They transported her, connected to a ventilator and in critical condition, to the nearby Hadassah Mount Scopus hospital. However, baby Chaya did not survive. She was pronounced dead some two hours after her arrival at the hospital.

41.     Chaya Zissel Braun was a long awaited child for the young parents – Shmuel Elimelech and Chaya Braun – who had tried to conceive unsuccessfully for a long time before baby Chaya was born.

42.     Chana Braun suffered psychological and emotional harm. Chana Braun was pushing baby Chaya's stroller when the car struck. One moment she was walking along the street

pushing her darling child; the next moment her baby daughter was smashed to the ground , obviously critically wounded.

43.     Shmuel Elimelech Braun suffered severe physical injuries as well as psychological and emotional harm as a result of the attack. He witnessed the car strike his infant daughter's stroller and saw her being thrown some ten meters into the air and land on her head unconscious.

44.     Plaintiffs Shimshon Sam Halperin, Sara Halperin, Murray Braun and Esther Braun learned of the attack shortly after it occurred. The two sets of grandparents were devastated by the news and were thrown into a state of severe emotional turmoil. They were crushed to hear that their granddaughter had been murdered like this and were horrified over the injuries to their children. They all suffered psychological and emotional harm as a result of the attack in which their son and daughter were seriously injured and their granddaughter was brutally killed.

45.     Hamas publicly praised the attack and referred to the attacker as a "martyr" and "hero."

46.     The defendants conspired and acted in concert with Hamas, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the Terrorist Attack, and other such acts of extrajudicial killing and international terrorism, and the Terrorist Attack was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

47.     Hamas carried out the Terrorist Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the

specific purpose of carrying out the Terrorist Attack and other such acts of extrajudicial killing and international terrorism.

## FIRST CLAIM FOR RELIEF
## FOR DAMAGES UNDER 28 U.S.C. §1605A(c)

48.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

49.     Iran is a foreign state that since 1984 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

50.     Syria is a foreign state that since 1979 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

51.     The defendants provided material support and resources to Hamas, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the Terrorist Attack.

52.     The Terrorist Attack was an act of extrajudicial killing within the meaning of 28 USC § 1605A.

53.     Decedent Chaya Zissel Braun was severely injured by the Terrorist Attack and died as a result of those injuries. Her parents – Shmuel Elimelech and Chana Braun – were severely injured. The maiming and murder of Chaya Zissel Braun and the injuries to Shmuel Elimelech and Chana Braun caused plaintiffs Shimshon Sam Halperin, Sara Halperin. Murray Braun and Esther Braun severe injury, including: loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

54.     As a direct and proximate result of the conduct of the defendants, Plaintiffs suffered the injuries and harm described herein.

55.     The defendants are therefore jointly and severally liable under 28 USC 1605A(c) for the full amount of plaintiffs' damages.

56.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

57.     Shimshon Sam Halperin, Sara Halperin, Murray Braun and Esther Braun severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

58.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages.

59.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

**SECOND CLAIM FOR RELIEF**
**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

60.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

61.     Defendants' conduct was willful, outrageous and dangerous to human life, and violates applicable criminal law, all international standards of civilized human conduct and common decency.

62.     Defendants intended to, and did in fact, terrorize the plaintiffs, and cause them egregious emotional distress. As a result and by reason of the Terrorist Attack, which was caused by the actions of defendants described herein, plaintiffs Shimshon Sam Halperin, Sara Halperin, Murray Braun and Esther Braun have suffered and will continue to suffer terror, severe mental anguish, bereavement and grief, and injury to their feelings.

14

63.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages.

64.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## THIRD CLAIM FOR RELIEF
## FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

65.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

66.     Defendants' conduct was willful, outrageous and/or grossly negligent, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

67.     Defendants' conduct terrorized the plaintiffs and caused them egregious emotional distress.

68.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages.

69.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## FOURTH CLAIM FOR RELIEF
## FOR CIVIL CONSPIRACY

70.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

71.     The defendants knowingly and willingly conspired, agreed and acted in concert with each other and with Hamas in a common plan and design to facilitate and cause acts of

international terrorism, extrajudicial killing and personal injury including the Terrorist Attack which harmed plaintiffs.

72.     As a result of the Terrorist Attack caused, resulting from and facilitated by the conspiracy between the defendants and Hamas, plaintiffs suffered the damages enumerated herein.

73.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages.

## FIFTH CLAIM FOR RELIEF
## FOR AIDING AND ABETTING

74.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

75.     The defendants provided Hamas with material support and resources within the meaning of 28 U.S.C. §1605A, and other substantial aid and assistance, in order to aid, abet, facilitate and cause the commission of acts of international terrorism, extrajudicial killing and personal injury including the Terrorist Attack which harmed the plaintiffs.

76.     As a result of the Terrorist Attack caused, resulting from and facilitated by the defendants' provision of material support and resources and other acts of aiding and abetting, plaintiffs suffered the damages enumerated herein.

77.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages.

## SIXTH CLAIM FOR RELIEF
## AGAINST THE IRANIAN DEFENDANTS
## FOR VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

78.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

79.    At all relevant times, defendant MOIS was an agent and/or office of defendant Iran, acting within the scope of its agency and/or office. Defendant MOIS engaged in the acts described herein within the scope of its agency and/or office and to further the interests of defendant Iran.

80.    Defendant Iran authorized, ratified and/or condoned the conduct of defendant MOIS.

81.    Therefore, defendant Iran is vicariously liable for the acts of defendant MOIS.

82.    The Iranian defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may be hereinafter determined.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues legally triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs demand judgment as follows:

(a)    Judgment against all defendants, jointly and severally, for compensatory damages in an amount to be determined at trial;

(b)    Judgment against all defendants, jointly and severally, for punitive damages in an amount to be determined at trial;

(c)    Plaintiffs' costs and expenses;

(d)    Plaintiffs' attorneys fees; and

(e)      Such other and further relief as the Court finds just and equitable.


Dated: September 17, 2015
          Brooklyn, New York

                                        Respectfully submitted,

                                        THE BERKMAN LAW OFFICE, LLC
                                        *Attorneys for Plaintiffs*


                                   By:_____
                                           Robert J. Tolchin
                                           (D.D.C. Bar #NY0088)

                                        111 Livingston Street, Suite 1928
                                        Brooklyn, New York 11201
                                        (718) 855-3627

                                        NITSANA DARSHAN-LEITNER & CO.
                                        Nitsana Darshan-Leitner
                                        *Israeli counsel for the plaintiffs*
                                        10 Hata'as Street
                                        Ramat Gan, 52512 Israel
                                        Israeli #: 011-972-3-7514175
                                        U.S. #: 212-591-0073